Stephen I. Leshner (SBN 004754)
Stephen I. Leshner, P.C.
5635 N. Scottsdale Road, Ste. 170
Scottsdale, AZ 85250
Tel. (602) 266-9000, FAX (602) 932-9107
steve@steveleshner.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jill Gentry and Frank Gentry, her husband,<br><br>Plaintiffs,<br><br>v.<br><br>Megagen Implant Co., Ltd.; Megagen USA, Inc., a dissolved New Jersey corporation; and R2Gate America, Inc., d/b/a Megagen, a New Jersey corporation,<br><br>Defendants.<br>_____/ | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, Jill Gentry and Frank Gentry, by their undersigned counsel, sue the Defendants, Megagen Implant Co., Ltd; Megagen USA, Inc.; and R2Gate America, Inc., ("Megagen Defendants") and allege:

## **NATURE OF THE CASE**

1.  This is a products liability action for damages, which arises from injuries sustained by the Plaintiff, Jill Gentry, as a result of having been implanted with a Megagen Anyone 3.5 mm dental implant.

1

2.      The Megagen dental implants at issue were designed, manufactured, tested, marketed, promoted, distributed, and sold by the Megagen Defendants.

3.      The Megagen dental implant at issue was surgically implanted in Jill Gentry over multiple dates in 2017. The 3.5 mm implant was discovered to be cracked and failing on March 18, 2019 and was surgically removed on 6/18/2019 which caused severe injury to the Plaintiff.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States, which creates complete diversity of citizens and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  Personal jurisdiction over the parties is proper because Plaintiffs are residents of this District and Defendants did substantial business throughout the United States, including in this District.

5.      Venue in this action properly lies in the United States District Court for the District of Arizona, Phoenix Division, pursuant to 28 U.S.C. §1391, in that Defendants did substantial business in Arizona, sold the Megagen dental implants at issue in this District, and substantial events giving rise to Plaintiff's injuries occurred in this District.

## THE PARTIES

6.      At all relevant times, Plaintiffs, Jill Gentry and Frank Gentry, were, and are citizens, residents of, and domiciled in Glendale, Maricopa County, Arizona and were and are married and live together as husband and wife.

7.      Defendant Megagen Implant Co., Ltd (Megagen) is an entity organized and existing under the laws of the Republic of Korea.

8.      Megagen maintains an office and a mailing address in Englewood Cliffs, New Jersey.

9.      Megagen does business, and has a presence, in the United States under various names, including Megagen America and R2Gate America.

10.      Megagen maintains a website and domain name registration in the United States with the uniform resource locator https://megagenamerica.com. Megagen registered or caused to be registered this domain name in or about November, 2019.

11.      Megagen advertised, sold, promoted and delivered dental implants in the State of Arizona to dentists, including dentist Farzam Maleki, B.D.S., M.S., F.A.C.P. who implanted the Megagen implants into Plaintiff Jill Gentry in Scottsdale, Arizona.

12.      Defendant R2Gate America Inc. d/b/a Megagen is a domestic corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Englewood Cliffs, New Jersey.

13.      Megagen USA, Inc, is a dissolved New Jersey corporation as of December 22, 2020.

14.      R2GateAmerica., Inc. and Megagen USA, INC are alter egos of Megagen.

15.      At all relevant times, the Megagen Defendants, designed, tested,

manufactured, packaged, and sold the Megagen implants as dental tooth replacement implants, nationwide, including in the State of Arizona, and designed, tested, manufactured, packaged, and sold the Megagen implants that were implanted into the Plaintiff, Jill Gentry.

16.     At all relevant times, each of the Defendants and their directors and officers acted within the scope of their authority of each Defendant and on behalf of each other Defendant.  During all relevant times, Defendants possessed a unity of interest between themselves and exercised control over their subsidiaries and affiliates.  As such, each Defendant is each individually, as well as jointly and severally, liable to Plaintiffs for Plaintiff's injuries, losses and damages.

## **GENERAL ALLEGATIONS**

### **Nature and purpose of the Implants**

17.     The Megagen dental implants that were implanted into the Plaintiff, Jill Gentry were designed, manufactured, marketed and sold by the Megagen Defendants. The dental implants were utilized by dentists to replace teeth in dental patients. The 3.5mm diameter Megagen Anyone Dental Implant lacks the necessary mechanical strength at the apex of its hexagonal angle to withstand normal masticatory forces. This conclusion is based upon the following data: the fractures occur at the thinnest part of the implant head; the fractures happen at the sharpest point (apex of the angle) of the implant-abutment interface; no fractures have been observed where the internal hex was not engaged; fractures have not been observed in Megagen Anyone implants of diameters other than the 3.5mm implant.

4

18.     In or about 2013, the Megagen Anyone 3.5mm implant used in Jill Gentry was cleared for marketing as a medical device by the U.S. Food and Drug Administration (FDA) through a "grandfather" process known as 510(k).

19.     The Megagen Anyone 3.5mm implant used in Jill Gentry did not receive FDA approval through what is known as the Premarket Approval process (PMA) and therefore, defendants are not entitled to FDA governmental immunity.

20.     In 1976, the Medical Implants Amendment was passed, pursuant to which the FDA classified medical implants into three categories.  A Class I category implants poses almost no safety issues.  A Class II category implants poses moderate safety issues.  A Class III implants operates to sustain human life, is of substantial importance in preventing impairment of human health, or poses potentially unreasonable risks of harm to patients.

21.     Generally, Class III implants must undergo the Premarket Approval (PMA) process to be marketed in the United States.  Premarket Approval is a rigorous process that requires a manufacturer to submit what is typically a multivolume application that includes, among other things, extensive clinical data to support the implant's safety and effectiveness; a full statement of the device's components, ingredients, and properties, and of the principles of operation; a full description of the methods used in, and the facilities and controls used for, the design, manufacture, processing, and when relevant, packing and installation of, such implants: samples or implants components required by the FDA; and a specimen of the proposed labeling. When undergoing Premarket Approval, a Class III implants may not use an existing

device as a predicate, but rather the safety and effectiveness of the implants must be independently shown.

22.     The FDA may grant Premarket Approval only if it finds that there is reasonable assurance that the medical implants are safe and effective, and must weigh any probable benefit to health from the use of the implants against any probable risk of injury or illness from such use.

23.     The use of most dental implants predates the Medical Implants Amendments (MDA) of 1976.  Because the requirements for a PMA had not yet been established for these implants, metal-on-metal dental implant systems bypassed the rigorous scrutiny of the PreMarket Approval Process.  Instead, they were and are "grandfathered in" and cleared for marketing through demonstrating substantial equivalence to other "predicate" dental implants already on the market, which is the PreMarket Notification or 510(k) process by which a Class II or less risky implants is cleared for market.

24.     The Megagen implants which are the subject of this lawsuit are Class II medical implants and received clearance from the FDA through the 510(k), which only requires a showing of substantial equivalence to implants already on the market. In obtaining clearance for marketing of the Megagen implants, Defendants bypassed the PreMarket Approval (PMA) process altogether.

**Wrongdoing of the Defendants**

25.     In designing the Megagen implants, Megagen knew or should have known that the design of the 3.5mm implant was inadequate to withstand normal

6

masticular forces in the mouth.

26.     Prior to clearance for marketing of the Implants, Defendants did not properly or adequately test the implants for safety, efficacy, and durability.

27.      While Defendants wanted to market its Megagen implants in the U.S., they did not want to endure the long and expensive FDA approval process.  Instead, Defendants used the loophole in the FDA regulations that would allow the implants to enter the U.S. market without proper testing or approval by representing that the dental Megagen implants were substantially equivalent to other dental implant products already on the market

28.     Prior to the date of Plaintiff's implant, the Megagen implants were known by the Defendant to be failing and were being revised at a rate higher than other comparable artificial dental implants readily available on the market that did not employ the same design.

29.     Prior to Plaintiff's implant, Defendants did not warn patients, surgeons, customers, or its field representatives that these Megagen dental implants were known to be failing from fractures requiring revisions at higher-than-expected rates.

30.     The Megagen implants were designed, manufactured, labeled, marketed, and promoted, in such a way that they failed to perform equally as well as other comparable implants readily available on the market.

31.     Prior to Plaintiff's implant, Defendants received notice that the Megagen Anyone 3.5mm implants were failing at an unacceptably high rate and Defendants concealed that knowledge from the dental community and the general

public at large.

32.     Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the dental community and the general public, including Plaintiff and Plaintiff's implanting dentist that the Megagen dental implants were safe and effective for their intended use.

33.     Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Megagen dental implants from the dental    community and the general public, including Plaintiff and Plaintiff's implanting dentist.

34.     Defendants' misrepresentations were communicated to the dental community and the general public, including Plaintiff and Plaintiff's implanting dentist with the intent that they would rely on those misrepresentations and omissions in selecting the Megagen implants.

    a.  Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Megagen implants, including but not limited to, the fact that Megagen implants were not as safe as other available dental implant implants;

    b.  the Megagen implants had an unacceptably high rate of failures which required revision surgery;

    c.  the safety and performance of the Megagen implants were not adequately tested and/or known by Defendants prior to being cleared for market;

    d.  patients implanted with the Megagen implants were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other dental implants;

e. the Megagen implants were designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

f. safer alternative implants were available.

35.    To Plaintiff's detriment, Plaintiff and her implanting dentist justifiably relied upon and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Megagen dental implants.

36.    Had Plaintiff and/or her implanting dentist known the true facts about the dangers and serious health and safety risks of Defendants' implants, she would not have consented to having the implants implanted in her.

37.    As a direct and proximate result of Defendants' misrepresentations and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

38.    The conduct and acts of Defendants were attended by circumstances of malice, or willful and wanton conduct, and/or in reckless disregard of the consequences from which malice may be inferred, and show a total disregard for human life and human suffering.

39.    It was not until after Plaintiff's revision surgery of June 18, 2019 that Plaintiff, Jill Gentry, knew or reasonably should have known that her injuries and/or that the failure of the Megagen Anyone 3.5mm implant, was the result of defects in the design, manufacture, or labeling of her implanted Megagen implants.

**<u>Plaintiff's Implants and Injuries due to the Megagen Implant</u>**

40.    In 2017, Plaintiff, Jill Gentry was implanted with Megagen dental

implants, including the Megagen Anyone 3.5 mm implant.  Her implanting dentist

implanted the implants properly and according to the instructions available from

Defendants.  Approximately two years later, on March 18, 2019, the implant was

discovered to be cracked and failing, and the implant had to be surgically removed

on June 18, 2019.

41.     As a result of having been implanted with the Megagen Anyone 3.5mm

implant, Jill Gentry suffered failure of her implant which required revision surgery,

and caused her severe pain, emotional distress, and Plaintiff has incurred substantial

economic damages including dental and medical expenses and lost wages, and said

injuries and damages are continuing.

## COUNT I – STRICT LIABILITY – DESIGN DEFECT

42.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their

Complaint as though fully set forth herein.

43.     At all relevant times, the Megagen Defendants designed, manufactured,

marketed, distributed, sold, and promoted the Megagen implants that were implanted

into the Plaintiff in 2017.

44.     At all relevant times, the Implants was expected to, and did, reach

prescribing dentists and consumers, including the Plaintiff, Jill Gentry, without a

substantial change in the condition in which it was sold.

45.     At all relevant times, Plaintiff and her implanting dentist used the

implants for its intended and reasonably foreseeable purpose.

46.     At all relevant times, the design of the implants that were implanted in

the Plaintiff was defective in that it created an unreasonably high risk of injury due to fracture which occurred under normal and expected use, leading to extreme pain to the Plaintiff, and failure of the implants which required dental implant/revision surgery.

47.     As it was designed, the implants that were implanted into the Plaintiff were unreasonably dangerous taking into the consideration the utility of the implants and the risk involved in its use, in that it posed a risk of failure and injury to an extent beyond that which would be contemplated by the ordinary consumer.

48.     At all relevant times, there were safer alternative designs other than the one used by the Defendants which were economically and technologically feasible and, within reasonable probability, would have prevented or significantly reduced the risk of fracture and failure of the implants.

49.     As a direct and proximate result of the defective design of the implants, Plaintiff was caused and/or in the future will be caused, to suffer severe personal injuries, pain, functional impairment, emotional distress, and economic loss, including but not limited to, obligations for medical, dental services and expenses, lost wages, and other damages.

**COUNT II – STRICT LIABILITY – MANUFACTURING DEFECT**

50.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their Complaint as though fully set forth herein.

51.     At all relevant times, the Megagen Defendants designed, manufactured, distributed, marketed, promoted, supplied, and sold the Megagen dental implants that

were implanted into the Plaintiff, Jill Gentry.

52.     At all relevant times, the Implants was expected to, and did, reach prescribing dentists and consumers, including the Plaintiff, Jill Gentry, without a substantial change in the condition in which it was sold.

53.     At all relevant times, Plaintiff and her implanting surgeon used the implants for their intended and reasonably foreseeable purpose.

54.     The implants that were implanted in the Plaintiff were defectively manufactured in that they created an unreasonably high risk of stress fracture and failure under normal and expected use of the implants, resulting in extreme pain and functional impairment to the Plaintiff, and required revision surgery.

55.     Further, it is Plaintiff's belief that the implants implanted into her differed from the manufacturer's design and specifications, or from typical units of the same product line.

56.     The fact that the Implants that were implanted in the Plaintiff left Defendants' manufacturing facility in the same defective condition they were in when implanted in the Plaintiff further supports that the defect occurred during the manufacturing process.

57.     As a direct and proximate result of the manufacturing defects in the Implants, Plaintiff sustained injuries as set forth above.

## COUNT III – STRICT LIABILITY – FAILURE TO WARN

58.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their Complaint as though fully set forth herein.

59.     At all relevant times, the Megagen implants that were implanted in the Plaintiff were unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert the dental community and patients, including Plaintiff and her implanting surgeon, as to the unreasonably high risk of failure when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to fracture in the patient's body, causing severe pain, and requiring revision surgery.

60.     The implants were not accompanied by warnings of the increased risk of fracture, which risk was specifically known to the Defendants.

61.     At all relevant times, Plaintiff and her implanting surgeon, used the implants for their intended or reasonably foreseeable purpose.

62.     Plaintiff and her implanting surgeon could not have discovered any defect in the implants through the exercise of due care.

63.     Defendants had a continuing duty to warn the dental community and the public, including Plaintiff and her implanting surgeon, of the potential risks and increased failure rate associated with the implants and breached that duty by failing to provide those warnings.

64.     Had Plaintiff's implanting dentist been given alternative warnings about the high risk of premature failure of these implants, the dentist would not have implanted the implants into the Plaintiff, but would have used alternative dental implant products.

65.     As a direct and proximate result of Defendants' failure to warn, Plaintiff

13

sustained injuries as set forth above.

## COUNT IV – NEGLIGENCE

66.     Plaintiffs incorporate by reference paragraphs 1 through 41 of their Complaint as though fully set forth herein.

67.     At all relevant times, the Megagen Defendants designed, manufactured, distributed, marketed, promoted, and sold the Megagen implants which were implanted into Plaintiff Jill Gentry.

68.     At all relevant times, the Megagen Defendants owed a duty to patients and consumers of the dental implants, including the Plaintiff, Jill Gentry, to use reasonable care in the design, manufacturing, testing, packaging, labeling, selling and distribution of the Megagen implants.

69.     At all relevant times, Defendants knew or should have known that the design of the Megagen implants necessitated clinical trials and other pre-marketing evaluations of risk and efficacy.  Such testing would have revealed the increased risk of failure and complications associated with the Megagen implants. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Megagen implants' safety and performance prior to placing the implants into the stream of commerce.

70.     At all relevant times, Defendants knew or should have known of the serious complications and high failure rate associated with the Megagen implants caused by fracture.

71.     At all relevant times, Defendants were negligent in failing to use

reasonable care in the design, manufacture, testing, packaging, labeling, marketing and sales of the Implants in that, when correctly implanted and used as intended, the components of the Implants began to fracture causing extreme pain, suffering and required Plaintiff to undergo invasive dental implant revision surgery.

72.     As a direct and proximate result of Defendants' negligence, Plaintiff sustained severe personal injuries, pain and suffering, emotional distress, and financial or economic loss, including but not limited to obligations for medical services and expenses, loss of wages, and other damages.

## COUNT V – NEGLIGENT MISREPRESENTATION

73.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their Complaint as though fully set forth herein.

74.     At the time Defendants manufactured, designed, marketed, sold and distributed the Megagen implants for use by Plaintiff, Defendants knew or should have known of the use for which the implants were intended and the serious risks and dangers associated with such use of the Implants.

75.     Defendants owed a duty to treating dentists and to the ultimate end-users of the Megagen implants, including Plaintiff, to accurately and truthfully represent the nature and risks of the implants to those users and their implanting surgeons.

76.     Defendants breached that duty by misrepresenting and/or failing to adequately warn Plaintiff's implanting dentist, the medical community, Plaintiff, and the public about the unreasonably high risks of fracture of the Megagen dental

implants, particular of the 3.5mm Megagen Anyone Dental Implant, which Defendants knew or in the exercise of diligence should have known.

77.     At all relevant times, Defendants knew, or should have known, that their representations regarding the safety and performance of the Megagen implants were, in fact, false.

78.     At all relevant times, Defendants failed to exercise ordinary care in determining the truth or falsity of its representations, and by misrepresenting the safety and performance of the Megagen dental implants.

79.     As a direct and proximate result of Defendants' negligent misrepresentations and concealment of material facts concerning the risks of failure and injury caused by the 3.5mm Megagen Dental Implant, Plaintiff has suffered injuries as set forth herein.

## COUNT VI – FRAUDULENT MISREPRESENTATION

80.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their Complaint as though fully set forth herein.

81.     Prior to the time Plaintiff underwent Megagen implants, Defendants had received complaints concerning the 3.5mm Megagen Dental Implant and were aware that this product was prone to fractures and failures within a year or two after implant.

82.     Despite that knowledge, Defendants falsely and fraudulently misrepresented to the medical and healthcare community, including Plaintiff and her implanting surgeon, and/or the FDA, that the Megagen implant had been properly tested and was safe and effective for its intended use.

83.     The representations made by Defendants to the medical and healthcare community, including Plaintiff and Plaintiff's implanting surgeon and/or the FDA, regarding the safety and performance of the implants were, in fact, false.

84.     At all relevant times, Defendants knew or should have known that the Megagen implants had not been sufficiently tested, were defectively designed, and lacked adequate warning and instructions.

85.     At all relevant times, Defendants knew or should have known that the Megagen implants could and would cause injury to users of the product, and that the implants' inherent dangers exceeded any purported benefit.

86.     At the time said representations were made by the Megagen Defendants, Defendants knew that those representations were false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

87.     Megagen's misrepresentations to Plaintiff, Plaintiff's dentist and the FDA, included the omission, concealment or suppression of material information regarding the safety and performance of the implants, including but not limited to:

    a.  the implants posed an unreasonably high risk of failure within just a few years, which would require removal of the implants and further dental procedures;

    b.  the safety and performance of the implants has not been adequately tested and/or confirmed by Defendants;

    c.  patients implanted with the implant implants were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other dental implants;

    d.  The implants were designed, manufactured, marketed, promoted,

distributed and sold negligently, defectively, and or/or improperly;

    e.  the implants were not as safe as other available dental implants;

    f.  alternative safer dental implants were available.

88.    Defendants had sole access to the material facts regarding the safety and performance of the implants.  Defendants knew Plaintiff and Plaintiff's implanting dentist and/or the FDA had no way of determining the truth behind Defendants' misrepresentations, concealment, omission and suppression of material facts as set forth herein.

89.    Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public.  Defendants intended said representations to induce Plaintiff, Plaintiff's implanting dentist, the medical community and the general public to recommend, implant and purchase the implants for use as part of a total dental placement surgery.  Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of the Plaintiff.

90.    At all relevant times, Plaintiff and Plaintiff's implanting dentist were unaware of the falsity of said representations and reasonably believed them to be true.

91.    In reliance upon Defendants' misrepresentations and omissions, Plaintiff was induced to, and did, use the Megagen implants, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

92.    Defendants brought the Megagen Dental implants to the market, and

acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

93.     Had Plaintiff known the truth about the unreasonable risk of failure and injury posed by the Megagen Dental implants, particularly the 3.5mm Megagen Anyone Dental Implant, she would not have allowed to be implanted with it.

94.     As a direct and proximate result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

## COUNT VII – GROSS NEGLIGENCE

95.     Plaintiffs incorporate by reference Paragraphs 1 through 41 of their Complaint as though fully set forth herein.

96.     Plaintiffs intend to prove by clear and convincing evidence that Plaintiff, Jill Gentry's injuries and damages resulted from the Megagen Defendants' intentional wrongdoing, and/or gross negligence with reckless disregard for the health and safety of the ultimate consumer.

97.     The acts, omissions, or both by the Defendants that constituted intentional wrongdoing and/or gross negligence include, but are not limited to, one or more of the following:

a.   Defendants designed and used components and materials in the manufacture of the Megagen implants which they specifically knew created an unreasonably high risk of premature failure due to fracture after the implants had been implanted;

b.   Defendants failed to conduct adequate premarket or post-market testing of the Megagen implants;

c.   Defendants failed to properly market the implants;

d.   Defendants failed to warn of the unreasonably high risk of fracture

and failure of the implants and the nature of the injuries as a result of fractures posed by the Megagen implant.;

e.  In efforts to obtain clearance for marketing of the Megagen implants, Defendants knowingly misrepresented to, or omitted material information from, the U. S. Food & Drug Administration which was relevant to the injury that Plaintiff suffered;

f.  Defendants knowingly misrepresented the nature and safety of the Megagen implants in violation of the Arizona Consumer Protection Law, Arizona Revised Statute 44-1522;

g.  At all relevant times, Defendants were in possession of evidence demonstrating that the Megagen implants created an unreasonably high risk of failure and continued to market the Implants despite that knowledge.

98.     The conduct of the Defendants, which viewed objectively from Defendants' standpoint at the time of its occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to consumers, including Plaintiff.

99.     Based upon information and belief, Defendants had actual, subjective awareness of the risks involved with respect to their conduct, but nevertheless proceeded to design, manufacture, market and sell the implants with conscious indifference to the rights, safety and welfare of others.

100.     Defendants knew that there was a high probability that the implants that were implanted into Plaintiff would fracture and fail due to the design and materials of the implants.

101.     Despite that knowledge, Defendants nevertheless proceeded with conscious indifference to the rights, safety and welfare of consumers in general,

including the Plaintiffs.

102.    Defendants' conduct entitles Plaintiffs to punitive damages in an amount appropriate to punish and deter such conduct in the future.

### COUNT VIII – LOSS OF CONSORTIUM

103.    Plaintiffs incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

104.    As a direct and proximate result of the above-described injuries sustained by Plaintiff, Jill Gentry, her husband, Frank Gentry, has suffered a loss of his wife's consortium, companionship, society, affection, services and support, and will continue to suffer those losses in the future.

### JURY DEMAND

Plaintiffs hereby request a trial by jury.

### PRAYER

WHEREFORE, Plaintiffs pray that Defendants be summoned to appear and answer herein, and that upon final trial, Plaintiff be awarded judgment against Defendants for:

a) Compensatory damages in an amount above the minimum jurisdictional limits of this Court;

b) Punitive damages in an amount to be determined by the Court;

c) Post-judgment interest;

d) Reasonable and statutory attorneys' fees and costs;

e) Any such other and further relief to which Plaintiffs may be justly

entitled.


Dated this 15th day of March, 2021.


__/s/ Stephen I. Leshner_____
Stephen I. Leshner
Stephen I. Leshner, P.C.
5635 N. Scottsdale Road, Suite 170
Scottsdale, AZ 85250
602/266-9000 x22, FAX 602/266-9134
steve@steveleshner.com
Counsel for Plaintiffs